IN THE UNITED STATES COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARK BOATRIGHT, ZACH POINDEXTER, and others similarly situated | § § § | |
| *Plaintiff* | § § | CIVIL ACTION NO. |
| v. | § § | |
| GILLEY GREY, GEMS911, INC., and CHUCK PEOPLES | § § § | |
| *Defendants* | § § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

Plaintiff Mark Boatright and Zach Poindexter, individually and on behalf of others similarly situated, bring this Complaint against Defendants, and show as follows:

**I.  SUMMARY**

1.        This is an action brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq* ("FLSA").  Plaintiffs worked for Defendants as hourly-paid EMT/paramedics based in Midlothian, TX.  Plaintiffs regularly worked more than 40 hours per workweek and, when they did, Defendants did not pay them an overtime premium of at least one and one-half times their regular rate of pay for hours worked over 40 in a workweek.

2.        There is no overtime exemption or exception under the FLSA that applies to Plaintiffs' employment by Defendants.  Defendants' actions in not paying overtime for hours worked over 40 in a workweek are willful.

3.        Plaintiffs are not the only hourly-paid EMT/paramedics employed by Defendants who have been denied overtime compensation when they have worked over 40 hours in a workweek.  Defendants employ or have employed numerous other hourly-paid

EMT/paramedics based in Midlothian, TX, who also have been denied overtime compensation.

4.        Defendants' efforts to evade wage-and-hour (and tax-related) obligations are so pervasive that Defendants operate under the business name "GEMS," "GEMS 911," and/or "GEMS911, Inc." (collectively herein, "GEMS"), but there is no such entity registered with the State of Texas Secretary of State to do business in the State of Texas.  Defendants further refuse to issue the EMT/paramedics an IRS Form W-2 or IRS Form 1099 with a federal tax identification number.

5.        Plaintiffs bring this action on behalf of themselves and other similarly situated hourly-paid EMT/paramedics employed by Defendants to recover back wages, an equal amount of liquidated/double damages, attorney fees, interest, and costs.

## II. PARTIES

6.        Plaintiff Mark Boatright is an individual who resides in Tarrant County, TX. He consents to be a party plaintiff in this action.

7.        Plaintiff Zach Poindexter is an individual who resides in Rockwall County, TX. He consents to be a party plaintiff in this action.

8.        Defendant Gilley Grey is an individual who, upon information and belief, resides in Albuquerque, NM.

      a.   Defendant Grey controls, operates, and/or runs the GEMS business that provides EMT/paramedics for use at remote construction sites, wind farms, solar farms, and elsewhere, including in Midlothian, TX, where Plaintiffs worked for Defendants.

      b.   Defendant Grey is a nonresident engaged in business in the State of Texas,

and has not designated or maintained a resident agent for service of process.

c.  In addition or in the alternative, Defendant Grey is a nonresident who engages in business in the State of Texas, but does not maintain a regular place of business in this state or a designated agent for service of process and this action and its proceedings arise out of the business he does and has done in this state and to which he is a party.

d.  **Defendant Grey may be served with process by under the Texas Long-Arm Statute by delivering duplicate copies of this Complaint and the summons to the Texas Secretary of State, P.O. Box 12079, Austin, TX 78711-2079,[1] as Defendant Grey's agent for service of process**.

e.  The Texas Secretary of State then shall immediately mail a copy of the process to Defendant Grey at his home or home office, which Defendant Grey lists as "6100 4th Street NW, Suite A235, Albuquerque, NM 87107" on GEMS Applications of Employment,[2] and Potter Randall County, TX lists as "8201 Golf Course Rd. NW, Ste. D3, Albuquerque, NM 87120-58."[3]

9.      Defendant GEMS911, Inc. is a foreign for-profit corporation registered in the state of Montana.

a.  According to the Montana Secretary of State, the status of GEMS911, Inc. is "active-suspended."[4]

b.  Defendant GEMS911, Inc. transacts business in the State of Texas without

---

[1] For delivery by hand or overnight mail, the Texas Secretary of State address is "James E. Rudder Building, 1019 Brazos, Room 105, Austin, TX 78701."
[2] *See* **Exhibit 1** attached hereto and incorporated herein.
[3] *See* **Exhibit 2** attached hereto and incorporated herein.
[4] *See* **Exhibit 3** attached hereto and incorporated herein.

being registered as required by Chapter 9 of the Texas Business Organizations Code.[5]

c.   Defendant GEMS911, Inc. does not maintain a registered agent in the State of Texas.

d.   **Defendant GEMS911, Inc. may be served with process by under the Texas Long-Arm Statute by delivering duplicate copies of this Complaint and the summons to the Texas Secretary of State, P.O. Box 12079, Austin, TX 78711-2079,[6] as Defendant GEMS911, Inc.'s agent for service of process**.

e.   The Texas Secretary of State then shall immediately mail a copy of the process to Defendant GEMS911, Inc. at the address of its president and registered agent, Gilley Grey, 1633 Main St., Suite A-144, Billings, MT 59105, or wherever he may be located.[7]

f.   In the alternative, Defendant GEMS911, Inc. may be served with process directly by serving its registered agent, Gilley Grey, 1633 Main St., Suite A-144, Billings, MT 59105.[8]  Defendant GEMS911, Inc. also may be served with process by serving its president, Gilley Grey wherever he may be located.

10.   Defendant Chuck Peoples is an individual who resides in Cedar Hill, Texas.

a.   Defendant Peoples has managed and supervised Plaintiffs and other hourly-

---

[5] *See* **Exhibit 4** attached hereto and incorporated herein.
[6] For delivery by hand or overnight mail, the Texas Secretary of State address is "James E. Rudder Building, 1019 Brazos, Room 105, Austin, TX 78701."
[7] *See* **Exhibit 5** attached hereto and incorporated herein.
[8] *Id.*

paid EMT/paramedics employed by Defendants based in Midlothian, Texas.

b. **Defendant Peoples may be served with process at his place of residence, 530 Lee St., Cedar Hill, TX 75104, his usual place of business, or wherever he may be found**.

## III.  JURISDICTION AND VENUE

11.      This Court has original jurisdiction over this action because Plaintiffs assert a claim arising under federal law.   Plaintiffs assert claims arising under 29 U.S.C. §§ 207 and 215.

12.      Venue is proper in this district because it the judicial district where a substantial part of the events or omissions giving rise to the claim occurred, at least one Defendant resides in this district, and Defendants conduct business in this district.  Further, Plaintiffs regularly worked over 40 hours per week for Defendants in Midlothian, TX, which is located in this judicial district, without receiving payment of overtime compensation.

## IV.  COVERAGE

13.      At all times material to this action, Defendants have acted, directly or indirectly, in the interest of an employer with respect to Plaintiffs, and Defendants have been an employer within the meaning of the FLSA, 29 U.S.C. § 203(d), in that Defendants acted directly or indirectly in the interest of an employer in relation to Plaintiffs.

14.      At all times material to this action, Defendants have constituted an enterprise within the meaning of Sections 3(r) of the FLSA, 29 U.S.C. § 203(r), in that Defendants performed (either through unified operation or common control) related activities for a common business purpose.

15.     At all times material to this action, Defendants have constituted an enterprise within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that Defendants have had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise have had and have an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

16.     Within the three-year period preceding this action, Defendants annual gross revenues – upon information and belief – have exceeded $500,000 per year.  During the same period, Defendants have employed both Plaintiffs as employees and other employees engaged in commerce or handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.  The goods handled by Plaintiffs and other employees includes, but is not limited to, black uniforms/shirts containing the "GEMS" name or logo, and EMT/paramedic equipment and supplies used by Plaintiffs such as smartphones, handheld radios, temporal scanner thermometers, facial masks, shields, anti-bacterial hand sanitizer, and more.

17.     At all times material to this action, Defendant Grey has acted, directly or indirectly, in the interest of an employer in relation to Plaintiffs.  For example, and without limitation, during the time period relevant to Plaintiffs' FLSA claims:

      a.  Defendant Grey identifies or has identified himself on his LinkedIn.com profile as GEMS's "founder/CEO";[9]

---

[9] See https://www.linkedin.com/in/gilley-grey-95751a6a/ (last visited April 6, 2021).



b. Defendant Grey is or has been the president of Defendant GEMS911, Inc.

c. Defendant Grey is or has been responsible for the overall leadership, control, and management of GEMS's business operations, including those located at the Midlothian, TX work site where Plaintiffs worked for Defendants;

d. Defendant Grey, upon information and belief, is or has been authorized to issue payments on behalf of GEMS, including payment of Plaintiffs' wages, payment of the equipment and supplies used by Plaintiffs during their employment by Defendants, and payment of health insurance supplied by Defendants Grey and GEMS to Defendant Peoples and Plaintiff Poindexter;

e. Defendant Grey, upon information and belief, has made and participated in business and employment-related decisions on behalf of Defendants to hire Plaintiffs, and set Plaintiffs' hourly rate of pay;

f. Defendant Grey has made or ratified decisions relating to significant aspects of the terms and conditions of Plaintiffs' employment, including the decision not to pay overtime compensation for hours worked over 40 in a

workweek, the decision to offer health insurance to Plaintiff Poindexter, and the decision not to issue an IRS Form W-2 or IRS Form 1099 to Plaintiffs or other similarly situated EMT/paramedics employed by Defendants.

g. Defendant Grey, upon information and belief, also maintains or has access to employment, work, and payroll-related records, in electronic format or as hard documents, relating to Plaintiffs' employment by Defendants. These records include "Employee Timesheets," "Applications for Employment," records of hourly wage payments, drug testing results, and more.

18.     At all times material to this action, Defendant Peoples has acted, directly or indirectly, in the interest of an employer in relation to Plaintiffs.  For example, and without limitation, during the time period relevant to Plaintiffs' FLSA claims:

a. Defendant Peoples identifies or has identified himself on his LinkedIn.com profile as GEMS's "Operations Manager" "responsible for  day to day operations of remote paramedics in the remote construction, wind farm, and solar farm industries";[10]



---

[10] https://www.linkedin.com/in/chuck-peoples-288922119/ (last visited April 6, 2021).

b.  Defendant Peoples has provided day-to-day management or supervision of Defendants' EMT/paramedics in Texas, including Plaintiffs;

c.  Defendant Peoples has made and participated in business and employment-related decisions on behalf of Defendants to hire Plaintiffs, set Plaintiffs' hourly rate of pay, set Plaintiffs' work schedules, and enact or enforce workplace/employment policies as it related to Plaintiffs' employment for Defendants, including the decision not to pay overtime compensation when an EMT/paramedic works over 40 hours in a week.

19.     All times relevant to their employment by Defendants, Plaintiffs have been an employee engaged in commerce or in the production of goods for commerce as defined by the FLSA.  For example and by no means a limitation, Plaintiffs have handled or used equipment, materials, and supplies supplied to them by Defendants and manufactured outside the state of Texas, including but not limited to, black uniforms/shirts containing the "GEMS" name or logo, a 2008 or 2009 Ford Expedition (with a Gross Vehicle Weight Rating of 7,400 pounds) emblazoned with the "GEMS" name and logo and a Wyoming vanity license plate ("GEMS 92"), and EMT/paramedic equipment and supplies used by Plaintiffs such as smartphones, handheld radios, temporal scanner thermometers, facial masks, shields, anti-bacterial hand sanitizer, and more.

## V.  FACTUAL BACKGROUND[11]

### A.  Background on Defendants

20.     Defendant Grey is in the business of employing EMT/paramedics to provide

---

[11] The averments contained in this Complaint are made upon information and belief.  Wherever it is alleged that Defendants did any act or thing, it is alleged that Defendants did such act or thing by or through its principals, agents, employees, officers, managers, and/or affiliates, and that such act or thing was done within

onsite health and safety compliance-related services to third-parties at construction sites, wind farms, solar farms, and other locations.

21.        Defendant Grey operates and controls the business described in the preceding paragraph under the name "GEMS," "GEMS 911," and/or "GEMS911, Inc."

22.        Regardless of whether it is called "GEMS," "GEMS 911," or GEMS911, Inc., none of these is a corporation or other business entity registered with the Texas Secretary of State to transact business in the State of Texas.[12]

23.        One location where Defendant Grey operates the GEMS business in Texas is in Midlothian, Texas at the construction site where Google is building a massive 375-acre data center campus in Midlothian's Railport industrial park.[13]

24.        Defendant Grey and/or Defendant GEMS911, Inc., under the GEMS business name, provide onsite health and safety compliance-related services at the Google Midlothian construction site by employing hourly-paid EMT/paramedics like Plaintiffs and others.

25.        Defendant Grey and/or Defendant GEMS911, Inc., employ and have employed Defendant Peoples to provide the day-to-day supervision of Defendants' EMT/paramedics working at the Midlothian construction site and elsewhere in the Dallas/Fort Worth Metroplex.

26.        To facilitate Defendant Peoples' supervision of Defendants' Dallas/Fort Worth Metroplex operations, Defendant Grey and/or Defendant GEMS911, Inc., directly or

---

the scope of such person's employment and authority, and with the knowledge, participation, approval and ratification of Defendants and the persons and/or entities that control and operate Defendants.
[12] *See* **Exhibit 4**.
[13] https://www.dallasnews.com/business/real-estate/2019/06/14/google-s-massive-600m-data-center-takes-shape-in-ellis-county-as-tech-giant-ups-texas-presence/ (last visited April 7, 2021).

indirectly, rented or leased a residence at 530 Lee St. in Cedar Hill, TX for Defendant Peoples' business and personal use.

## B. Background on Plaintiff Boatright

27.      Plaintiff Mark Boatright worked for Defendants as an hourly-paid EMT/paramedic at the Midlothian, TX construction site, reporting directly to Defendant Peoples, from approximately August 2020 until about February 2021.

28.      Before his employment with Defendants began, Plaintiff Boatright completed a GEMS "Application for Employment" and submitted it to Defendant Grey.

29.      Upon information and belief, Defendant Grey made or ratified the decision to hire Plaintiff Boatright.

30.      During Plaintiff Boatright's employment by Defendants, Defendants tracked Plaintiff Boatright's work time using an app called Clock Shark and issued him payment electronically to Plaintiff Boatright's personal bank account in Texas.[14]

31.      During his employment by Defendants, Plaintiff Boatright earned $25.00 per hour after an introductory period when he briefly earned $23.00 per hour.

32.      Upon information and belief, Defendant Grey and Defendant Peoples made or ratified the decision to set Plaintiff Boatright's initial pay rate and final pay rate.

33.      Plaintiff Boatright regularly worked over 40 hours per week for Defendants.

34.      Excluding weeks with a federal holiday or when he took vacation, Plaintiff Boatright averaged working more than 57 hours per seven-day workweek for Defendants. In fact, he frequently worked more than 65 hours per workweek for Defendants.

35.      In spite of Plaintiff Boatright being hourly-paid and working more than 40

---

[14] Defendants did not provide Plaintiff Boatright an accompanying pay statement to identify the legal name or business address of the employing entity as is customary is almost every employment relationship.

hours in a workweek during his employment, Defendants did not pay Plaintiff Boatright an overtime premium of at least one and one-half times his regular rate for all hours worked in a workweek over 40. Instead, Defendants purported to pay Plaintiff Boatright "straight time" for all hours worked.

## C. Background on Plaintiff Poindexter

36.      Plaintiff Zach Poindexter worked for Defendants as an hourly-paid EMT/paramedic at the Midlothian Google construction site and elsewhere, reporting directly to Defendant Peoples, from approximately March 2020 until about March 2021.

37.      Before his employment with Defendants began, Plaintiff Poindexter completed a GEMS "Application for Employment" and submitted it to Defendant Grey.

38.      Upon information and belief, Defendant Grey made or ratified the decision to hire Plaintiff Poindexter.

39.      During Plaintiff Poindexter's employment by Defendants, Defendants tracked Plaintiff Poindexter's work time using an app called Clock Shark and issued him payment electronically from a banking account with the GEMS name associated with it to Plaintiff Poindexter's personal bank account in Texas.[15]

40.      During his employment by Defendants, Plaintiff Poindexter earned $22.50 per hour.

41.      Upon information and belief, Defendant Grey and Defendant Peoples made or ratified the decision to set Plaintiff Poindexter's pay rate at $22.50 per hour.

42.      Plaintiff Poindexter regularly worked over 40 hours per week for Defendants.

---

[15] Like Plaintiff Boatright, Defendants did not provide Plaintiff Poindexter an accompanying pay statement to identify the legal name or business address of the employing entity as is customary is almost every employment relationship.

43.        Excluding weeks with a federal holiday or when he took vacation, Plaintiff Poindexter averaged working more than 51 hours per seven-day workweek for Defendants. In fact, he sometimes worked more than 70 hours per workweek for Defendants.

44.        In spite Plaintiff Poindexter being hourly-paid and working more than 40 hours in a workweek during his employment, Defendants did not pay Plaintiff Poindexter an overtime premium of at least one and one-half times his regular rate for all hours worked in a workweek over 40. Instead, Defendants purported to pay Plaintiff Poindexter "straight time" for all hours worked.

45.        In addition to the Midlothian construction site, Plaintiff Poindexter also worked for Defendants at the Mesquite Rodeo in Mesquite, TX.

46.        The Mesquite Rodeo was a new business opportunity for Defendant Grey and/or Defendant GEMS911, Inc. In connection with this assignment, Defendant Grey called Plaintiff Poindexter in Texas to explain the type of equipment that Defendants needed for the Mesquite Rodeo assignment. Defendant Grey told Plaintiff Poindexter that he needed a Polaris-type UTV vehicle and instructed Poindexter to coordinate with Defendant Peoples to locate one for purchase by Defendant Grey/GEMS. Plaintiff Poindexter followed Defendant Grey's work instructions, located a UTV for sale at a store in TX, and picked it up in a GEMS pickup truck. Defendant Grey called the store in Texas to pay for the UTV.

**D. Defendants' Failure to Pay Overtime Compensation**

47.        Plaintiffs Boatright and Poindexter are not alone in not being paid an overtime premium of at least one and one-half times their regular rate of pay when they worked over 40 hours in a workweek for Defendants.

48.     Defendants have paid not overtime premium to any other hourly-paid EMT/paramedics based in Midlothian, TX or the Dallas/Fort Worth Metroplex when they worked over 40 hours in a workweek in the preceding two-year and/or three-year period.

49.     There is no overtime exemption or exception under the FLSA that exempts Plaintiffs Boatright and Poindexter from the FLSA's mandatory overtime provisions.

50.     Consequently, to avoid wage-and-hour (and tax-related) obligations, Defendants have classified Plaintiffs Boatright and Poindexter (and every other hourly-paid EMT/paramedic) as "independent contractors" in an attempt to avoid paying them overtime compensation of at least one and one-half times his/her regular rate of pay for all hours worked in a workweek over 40.

51.     However, at all times material to this action, Plaintiffs Boatright and Poindexter were employees of Defendants as a matter of "economic reality":

     a.   Defendants have had the authority to hire/fire, adjust pay rates, discipline, schedule, and perform all other roles generally associated with that of an employer with regard to Plaintiffs;

     b.   Defendants have assigned Plaintiffs where to perform their work;

     c.   Defendants have required Plaintiffs to report to an assigned job site at a set time;

     d.   Defendants have incurred the expense for Plaintiffs for use of GEMS uniforms; the cost of badging and background checks; use of vehicles, and other expenses incurred in connection with the job;

     e.   Plaintiffs are or were an integral part of Defendants' operation in Midlothian, TX;

f.   Plaintiffs work or have worked for Defendants for a long period of time;

g.   Plaintiffs are or have been paid by the hour by Defendants, not per the job or task;

h.   Defendants have had the power to terminate Plaintiffs at any time, for any or no reason, and without notice;

i.   Defendants have prohibited Plaintiffs, directly or indirectly, from hiring their own helpers for use at the Midlothian Google construction site;

j.   Plaintiffs dedicated or have dedicated their full-time efforts to Defendants;

k.   Plaintiffs do not and have not submitted invoices to Defendants in order to obtain payment;

l.   Defendants' investment in the equipment, infrastructure, supplies, materials, vehicles, taxes, licenses, insurance and other overhead and capital expenditures is immense relative to the individual investment of each Plaintiff, which is largely limited to his/her labor;

m.   Plaintiffs do not and have not provided their own general liability, business liability, or workers' compensation insurance; and

n.   There is and was no opportunity for Plaintiffs to profit from increased efficiencies or initiative as they are laborers paid by the hour and prohibited from hiring helpers.

## VI.  COLLECTIVE ACTION ALLEGATIONS

52.      Plaintiffs incorporates the paragraphs of Section V as if stated fully herein.

53.      The term "Similarly Situated Individuals," as used herein, means all current and former hourly-paid EMT/paramedics of Defendants who have worked over 40 hours in a

workweek in the Dallas/Fort Worth Metroplex, inclusive of the Google construction site in Midlothian, TX, within the preceding three year period without receiving overtime compensation.

54.      Plaintiffs and Similarly Situated Individuals were subjected to the same or similar pay practices in that Defendants paid them hourly and Defendants have not paid Plaintiffs and Similarly Situated Individuals at time-and-one-half their regular rates of pay for hours worked in excess of 40 hours in a workweek.  Accordingly, Similarly Situated Individuals are similarly situated to Plaintiffs in terms of job duties and pay provisions.

55.      Defendants' failure to pay overtime compensation at the rates required by the FLSA results from generally applicable policies or practices and do not depend on the personal circumstances of the Similarly Situated Individuals.

56.       Defendants, upon information and belief, did not perform an individualized analysis before hiring Plaintiff Boatright to determine whether he should have been classified as an independent contractor or an employee for purposes of the FLSA and its regulations.

57.      Defendants, upon information and belief, did not perform an individualized analysis before hiring Plaintiff Poindexter to determine whether he should have been classified as an independent contractor or an employee for purposes of the FLSA and its regulations.

58.      Defendants, upon information and belief, did not perform an individualized analysis before hiring each Similarly Situated Individual to determine whether he/she should have been classified as an independent contractor or an employee for purposes of the FLSA and its regulations.

59.        Plaintiffs' experiences are typical of the experiences of the Similarly Situated Individuals.

60.        Plaintiffs and all Similarly Situated Individuals, who may join this action, are entitled to overtime compensation for hours worked in excess of 40 hours per week at a rate of one and one-half their regular rate of pay.

61.        Aside from Plaintiffs, in the preceding three years before his action, Defendants have utilized at least 20 or more hourly-paid EMT/paramedics in Texas classified by Defendants as independent contractors that Defendants did not pay an overtime premium to when these individuals worked over 40 hours in a workweek.

## VII.   CAUSE OF ACTION:
## VIOLATION OF THE FAIR LABOR STANDARDS ACT

62.        Plaintiffs incorporate the preceding paragraphs of this Complaint as if stated fully herein.

63.        During the two-year and three-year limitations period preceding this action, Defendants have violated Sections 7 and 15 of the FLSA, 29 U.S.C. §§ 207 and 215(a)(2), by employing Plaintiffs (and Similarly Situated Individuals who may join this action) in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA as aforesaid, for workweeks longer than 40 hours without compensating him/her for work in excess of 40 hours per week at a rate no less than one-and-one-half times the regular rate for which he/she was employed.

64.        Defendants are aware or should have been aware of their obligation to pay overtime compensation to Plaintiffs (and Similarly Situated Individuals).

65.        Defendants' decision not to pay Plaintiffs (and Similarly Situated Individuals) an overtime premium for hours worked over 40 is not the result of an ignorance of the law.

66.        Defendants' decision not to pay Plaintiffs (and Similarly Situated Individuals) an overtime premium for hours worked over 40 is not the result of a failure to investigate Defendants' obligations to pay overtime compensation to Plaintiffs (and Similarly Situated Individuals).

67.        Defendants acted willfully or intentionally in failing to pay Plaintiffs (and Similarly Situated Individuals) in accordance with the FLSA.

## VIII.  MISCELLANEOUS

68.        All conditions precedent have occurred or been performed.

69.        There is no agreement between Plaintiffs, on the one hand, and Defendants, on the other hand, that requires this dispute to be submitted to arbitration.

## IX.  PERSONAL JURISDICTION

70.         This Court has personal jurisdiction over Defendants and the Court's exercise of personal jurisdiction over Defendants is consistent with due process.

71.        Defendant GEMS911, Inc. conducts business in the state of Texas and in this judicial district, and that business has resulted in the wage-and-hour violations made the basis of this action.

72.        Defendant Peoples resides in this judicial district at 530 Lee St., Cedar Hill, TX 75104, and has been responsible for day-to-day supervision over Plaintiffs and Similarly Situated Individuals working in Midlothian, TX at the Google construction site.

73.        Defendant Grey owns real property in the state of Texas.

74.        In fact, Defendant Grey owns two parcels of real property in the state of Texas. Both are located in Potter Randall County, TX.  One is located at 12,000 LS Trail,

Amarillo, TX 79118; the other is located at 11,800 LS Trail, Amarillo, TX 79118.[16]

75.      Defendant Grey has used and uses one or both of the properties located in Potter Randall County, TX in connection with the GEMS business.

76.      For example, during Defendant Poindexter's employment by Defendants, Defendant Grey purchased health insurance coverage for Defendant Poindexter under Blue Cross Blue Shield policy, group number 293085, effective June 1, 2020.  The health insurance policy was purchased by Defendant Grey in the name of "GEMS911, Inc." and used or uses the business address "12,000 LS Trail, Amarillo, TX 79118.

77.      Upon information and belief, Defendant Grey also uses one or more of the addresses located in Potter Randall County, TX to store equipment or supplies for use in the GEMS business.

78.      Defendant Grey also rents or leases (or has rented or leased) a single family residence located at 530 Lee St., Cedar Hill, TX 75104, for Defendant Peoples to use a residence and business office in connection with Defendant Peoples' day-to-day supervision of Defendants' EMT/paramedics based at the Midlothian Google construction site.

79.      In addition to Defendant Grey owning real estate in Potter Randall County, TX, Texas, and renting/leasing real estate in Cedar Hill, Texas, Defendant Grey has actively and purposely directed activities and has consummated transactions in the state of Texas or with residents of the state of Texas, invoking the benefits and protections of its laws, and Plaintiffs' claims arise out of or relate to Defendant Grey's forum-related activities. For example, and without limitation:

---

[16] A true and correct copy of Potter Randall County property summary report for Year 2020 for the two parcels of real property and identifying "Gilley Grey" as the owner is attached hereto as <u>Exhibit 2</u>.

80.      Defendant Grey, upon information and belief, authorized or ratified the recruitment of Texas residents (such as Plaintiffs and others) directly or through an intermediary, such as listing job postings on Indeed.com or through Defendant Peoples while located in Texas, for employment inside the state of Texas, including for employment at the Google data center construction site located in Midlothian, TX.

81.      An example of the Indeed job posting that Plaintiff Boatright replied to is included below:



82.      A true example of the Indeed job posting that Plaintiff Poindexter replied to is

included below:



83.     Defendant Grey, upon information and belief, authorized or ratified the use of these Indeed job postings set forth in the two paragraphs above to recruit Texas residents, including Plaintiffs, to work for Defendants in Texas.

84.       Defendant Grey also oversees and controls Defendants' operations at the Google data center construction site located in Midlothian, TX.

85.       Upon information and belief, Defendant Grey, individually or on behalf of GEMS, entered into one or more written agreements with entities to provide paramedic/EMTs for use by third parties at the Google data center construction site located in Midlothian, TX.

86.       Upon information and belief, Defendant Grey has traveled to Texas for reasons related to Defendants' operations at the Google data center construction site located in Midlothian, TX.

87.       Defendant Grey employs or has employed two dozen or more EMT/paramedics in the state of Texas, including in this district, at the Google data center construction site located in Midlothian, TX, including Plaintiffs, Similarly Situated Individuals, and Defendant Peoples.

88.       Defendant Grey has made the decision or ratified the decision to hire EMT/paramedics to work in the state of Texas, including in this district, at the Google data center construction site located in Midlothian, TX, including Plaintiffs, Similarly Situated Individuals, and Defendant Peoples.

89.       Upon information and belief, Defendant Grey regularly directs communications, including telephone calls, text messages, and electronic messaging, to individuals located in the state of Texas, including in this district, such as Defendant Peoples, in connection with Defendants' operations at the Google data center construction site located in Midlothian, TX.

90.       Defendant Grey, upon information and belief, made or ratified the decision not

to pay overtime compensation to Plaintiffs and Similarly Situated Individuals when they work over 40 hours in a workweek in Texas.

91.    Defendant Grey, by physically paying Plaintiffs in Texas, committed the alleged statutory FLSA violations made the basis of this Complaint at least, in part, in Texas.

92.    Defendant Grey also communicated with Plaintiff Poindexter, who was located in Texas at the time, about work matters relating to his employment with Defendants.

93.    Consistent with due process, an employer fairly may be sued for employment practices in the forum in which he has recruited employees and caused them to undertake their work.  This is especially true here where Defendant Grey controls the GEMS business, GEMS911, Inc. was not a corporation registered to do business in Texas during the period of the wage-and-hour violations, Defendant Grey employed the Plaintiffs in Texas, Defendant Grey authorized or issued the payments to Plaintiffs in Texas, and Defendant Grey set the operative payroll policy of not paying overtime compensation for hours worked over 40 in a workweek.

## X.  RELIEF SOUGHT

94.    WHEREFORE, cause having been shown, Plaintiff Mark Boatright and Plaintiff Zach Poindexter pray for judgment against Defendants, jointly and severally, and seek the following relief:

> a.  For an Order, pursuant to Section 16(b) of the FLSA, finding Defendants liable for unpaid overtime wages due to Plaintiffs (and Similarly Situated Individuals who may join this action), and for liquidated damages equal in amount to the unpaid overtime compensation found due to Plaintiffs (and

those who may join this action); and

b.  For an Order awarding Plaintiffs (and Similarly Situated Individuals who may join this action) the costs of this action; and

c.  For an Order awarding Plaintiffs (and Similarly Situated Individuals who may join this action) attorneys' fees; and

d.  For an Order awarding Plaintiffs (and Similarly Situated Individuals who may join this action) pre-judgment and post-judgment interest, as allowable, at the highest rates allowable by law; and

e.  For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

/s/ Barry S. Hersh

_____

Barry S. Hersh
State Bar No. 24001114

*Board Certified in Labor and Employment Law*
*Texas Board of Legal Specialization*

Hersh Law Firm, PC
3626 N. Hall St., Suite 800
Dallas, TX 75219-5133
Tel.  (214) 303-1022
Fax  (214) 550-8170
barry@hersh-law.com

ATTORNEY FOR PLAINTIFFS